UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:05-CR-113 |
| V. | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| | ) | |
| DONALD R. HARMON and | ) | |
| JOHNNY HATCHER, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This matter comes before the Court upon Defendant Harmon's Motion

To Suppress Seized Evidence and brief [Doc. 43] and Defendant Hatcher's Motion To Suppress

Evidence Obtained From The Search Of 4323 Horace Taylor Road [Doc. 69]. The Court has already

permitted [Doc. 165] Defendant Hatcher to join [Doc. 43]. The parties appeared for hearings on

these motions on February 22 and 27, 2005. Assistant United States Attorney, Mike Winck was

present representing the government. Attorney Herb Moncier was present representing Defendant

Harmon. Attorney Randall Reagan was present representing Defendant Hatcher. Defendant

Harmon and Defendant Hatcher were present on February 22, but did not attend the hearing on

February 28. At the conclusion of the hearings, the Court invited the parties to submit supplemental

briefs, particularly as to the search warrant overbreadth claim. Counsel for the government filed a

supplemental brief [Doc. 163] on March 16, 2006. Accordingly, the Court took the suppression

motions and related filings under advisement on March 17, 2006.

1

## I. SEARCH WARRANTS

On September 29, 2005 Randall Jerry, Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), presented two applications for federal search warrants, based on seventeen-page affidavits [Doc. 69 and Ex.1-2][1], to a United States Magistrate Judge in the Eastern District of Tennessee for the search of Defendant Hatcher's residence at 4323 Horace Taylor Road and the search of Defendant Harmon's residence at 2047 Jericho Road, both located in Maryville, Blount County, Tennessee. The affidavits state that for the past eight (8) years, TFO Jerry has been assigned to the Knoxville Resident Office of the DEA which investigates large scale drug trafficking organizations. The affidavits reflect that TFO Jerry was then participating in an investigation of a marijuana distribution organization which was being conducted jointly by Special Agents and Task Force Officers of the DEA in Knoxville, Tennessee and Houston, Texas. The affidavits state that, based on his personal participation in this investigation, TFO Jerry has "probable cause to believe that the property and items" enumerated in the search warrants[2] [Doc. 69-2 and Ex. 1-2] are to be found on the defendants' premises and constitute evidence of "distribution of marijuana," "conspiracy to distribute marijuana," and "conspiracy to commit money laundering;" "contraband;" and the "fruits of the commission of these crimes."[3] The basis of the affiant's belief is set forth as follows:

---

[1] The affidavits in support of the search warrants cited herein are attached as (1) an exhibit to Defendant Hatcher's motion [Doc. 69-3] and (2) entered as an exhibit during the hearing as to Defendnat Harmon. The Court also notes that both affidavits set forth the same information and factual basis, with the only difference being the addresses of the premises to be searched.

[2] See infra Report at 19 for a description of the evidence authorized by the search warrant to be searched for and seized. The warrants contain five (5) clauses listing items to be seized.

[3] See 21 U.S.C. 841(a)(1); 21 U.S.C. 846; and 18 U.S.C. 1956(a)(1) and (h).

2

First, the affiant states that based on his training and experience investigating drug traffickers, he knows that drug traffickers keep and maintain the following items at their residences, places of business and locations where they exercise dominion and control: (1) records of assets derived from the sale of drugs, (2) proceeds of drug sales and assets purchased with drug proceeds[4], (3) large amounts of U.S. currency to maintain and finance their ongoing drug business, (4) books, records, receipts and other papers relating to the sale, purchase or transportation of controlled substances, (5) addresses or telephone numbers of drug trafficking coconspirators and drug customers in books, on papers, in Rolodexes, in cellular telephones, in computers and electronic organizers, and (5) photographs, videotapes, and audiotapes of themselves and their coconspirators, customers, assets and contraband.

Second, the affiant proceeds to set forth the facts and circumstances which TFO Jerry believes are sufficient to conclude that the items, as described above and more specifically set forth in [Doc. 69-2 and Ex. 1-2], will be found at the defendants' separate residences. In March 2002, TFO Jerry was advised by a TFO in Texas, TFO Hanslik ("Hanslik"), that a drug investigation was being conducted in the Southern District of Texas and that several telephone numbers from the Maryville, Tennessee area were being called by targets of their investigation. A Confidential Source (CS) told Hanslik that a man by the name of Ramiro Rodriguez was using a white Ford F-350 pick-up truck to transport marijuana to several different people in Arkansas and Maryville, Tennessee. Hanslik received a court order in January, 2002 to place a tracking devise on the Ford pick-up truck.

---

[4] Proceeds include, jewelry, vehicles, weapons, electronic equipment, and other expensive personal property, and records (including bank account records) of purchases, conversion, ans storage of such assets.

3

In March, 2002, Hanslik notified agents in the Knoxville DEA Resident Office that the Ford pick-up truck was in Tennessee and was being operated by John Caswell. Surveillance units were deployed and proceeded to follow the truck and observed it drive into the residence located at 4323 Horace Taylor Road [Defendant Hatcher's residence]. Again, in April, 2002, TFO Jerry was advised by Hanslik that the Ford pick-up truck, which was registered to John Caswell, was in the Knoxville area. TFO Jerry drove to Horace Taylor Road, observed the Ford pick-up truck, and then contacted Hanslik with the information. On May 14, 2002, John Caswell was observed driving the Ford pick-up truck and leaving a residence used by Ramiro Rodriguez in the Southern District of Texas. Caswell was stopped in Bells, Texas on May 15, 2002 and consented to the search of his truck, from which ninety-nine (99) pounds of marijuana was seized. Caswell advised that he had been transporting marijuana for Ramiro Rodriguez for a year and transporting it to Tennessee where it was sold for $800 per pound, but did not identify the Tennessee customers. On May 15, 2002, agents also conducted a consensual search of Caswell's residence in Texas where the telephone numbers of Defendants Hatcher and Harmon were located. On August 28, 2002, Caswell was arrested, agreed to cooperate with law enforcement, and stated that he delivered marijuana to Defendants Hatcher and Harmon in Tennessee at least once a month.

On March 15, 2005, Ramiro Rodriguez testified before a federal grand jury sitting in the Eastern District of Tennessee. Rodriguez had pled guilty to a controlled substance offense and, pursuant to a plea agreement, agreed to cooperate. Rodriguez testified that he began trafficking marijuana in 1998 or 1999 and used different drivers, namely Cole, Holland and Caswell, to transport and sell marijuana to Defendants Harmon and Hatcher in Tennessee. Rodriguez testified that the ninety-nine (99) pounds of marijuana seized from Caswell in May, 2002 was destined for

Tennessee and that the defendants owed him $113,000. After Rodriguez was arrested, an address book was seized from his residence, which contained Defendants Harmon's and Hatcher's phone numbers. These phone numbers were subscribed to by people who received mail at 2047 Jericho Road and 4323 Horace Taylor Road in Maryville, Tennessee.

On February 15, 2005, Daniel Holland testified before a federal grand jury sitting in the Eastern District of Tennessee. Holland was in custody pending charges in Louisiana at the time. Holland testified that he transported marijuana to Defendants Harmon's and Hatcher's houses in Tennessee, starting in late 1998 or early 1999. He stated that he also picked up money from the defendants on occasion. Holland testified that he continued driving until 2000, at which time Defendant Harmon and Defendant Hatcher were paying $750 per pound of marijuana for a total of $75,000 per load plus additional expenses for transportation. In 2000, Holland was charged with a drug offense, and Hatcher indicated he wanted a new driver. Holland then recruited John Caswell to drive marijuana to Defendants Harmon and Hatcher from Texas. Holland stated that he got out of the business in 2001, but that he and Caswell transported approximately 3,000 pounds of marijuana to the defendants.

On February 15, 2005, John Caswell testified before a federal grand jury sitting in the Eastern District of Tennessee. Caswell had pled guilty to a drug offense in Texas and, pursuant to a plea agreement, agreed to cooperate. Caswell testified that in late 1999 he was recruited by Cole to transport 50-60 pounds of marijuana, on two occasions, to Defendants Harmon and Hatcher at Hatcher's residence. He stated that the defendants paid them on each of the first two occasions. On a third occasion, he stated that he delivered marijuana to Defendant Harmon's residence and picked up money to take back. After Cole died, Caswell learned that Holland wanted him to

transport marijuana to Tennessee, and in May or June 2000, he began transporting marijuana to Hatcher and Harmon. Caswell testified that he made trips about once a month and was eventually transporting 100 pounds of marijuana per trip to them until May 15, 2002 when he was arrested with ninety (99) pounds of marijuana in Texas. He testified that he was transporting that marijuana to Tennessee. Caswell testified that during the two years he delivered marijuana to Tennessee, he would sometimes deliver the marijuana to Hatcher and sometimes to Harmon. Caswell testified that after he was arrested in May, 2002, he traveled back to Tennessee to collect money owed by Hatcher and Harmon to Rodriguez.

On December 29, 2003, TFO Lisa Carroll, DEA, checked the National Crime Information Computer (NCIC) concerning Defendants Hatcher and Harmon and learned that Hatcher had been sentenced to five (5) years in Louisiana for possession of cocaine and that Harmon had been sentenced to two (2) years in Blount County, Tennessee for possession with intent to distribute marijuana. On December 6, 2004, TFO Jerry confirmed from the United States Postal Inspection Service that Defendant Hatcher received mail at 4323 Horace Taylor Road and that Defendant Harmon received mail at 2047 Jericho Road in Maryville, Tennessee. Business records of the City of Alcoa Utilities, dated January 21, 2005, also reflected the same residential address information for Defendant Harmon and Defendant Hatcher. On February 16, 2005, TFO Jerry and TFO Camp drove John Caswell to U.S. Highway 129 near the McGhee Tyson Airport and, from that point, had him direct the agents to the addresses where he delivered marijuana to Hatcher and Harmon in Tennessee. Caswell directed the agents to Hatcher's residence located at 4323 Horace Taylor Road and to Harmon's residence located at 2047 Jericho Road in Maryville, Tennessee.

The magistrate judge issued the search warrants for the residences located at 2047 Jerico Road and 4323 Horace Taylor Road, Maryville, Blount County, Tennessee, and all outbuildings, appertenances, and vehicles located in the curtilage of such residences on September 29, 2005. Both search warrants were executed on October 5, 2005.

## II. FINDINGS OF FACT

The Court makes its factual findings in the analysis section of the report.

## III. ANALYSIS

The defendants contend that evidence seized from their respective residences in Maryville, Tennessee pursuant to federal search warrants executed on October 5, 2005 , should be suppressed because the warrants: (1) lack sufficient allegations necessary to establish probable cause, (2) were based on stale information, (3) were overly broad in that officers had too much discretion in determining what to seize and included seizure of lawful property, (4) there was an insufficient nexus connecting criminal activity with Defendant Hatcher's residence, (5) omitted material facts regarding the dates of the defendants' prior convictions, (6) were unlawful because they permitted the searches to be executed between 6 a.m. and 10 p.m., which were not daylight hours. The government counters the defendants' arguments on each point as indicated in detail below. The Court will examine each of the defendants' contentions in turn.

Initially, the Court notes that "[i]n reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." Whiteley v. Warden, 401 U.S. 560, 565 n. 8 (1971); United States v. Smith, 783 F.2d

7

648, 654 (6th Cir. 1986). At the hearing on this motion, the parties likewise agreed that the scope of the Court's review was limited to a fours corners review of the search warrants. The parties did not call any witnesses to testify at the hearing, but the Court did hear oral arguments from defense counsel and the government.

## 1. Probable Cause

The Fourth Amendment requires probable cause for searches and seizures. U.S. Const. amend. IV. When reviewing an application for a search warrant, the magistrate is charged with the responsibility of making an independent determination of whether probable cause existed based on the "totality of the circumstances." United States v. Pardue, 895 F.2d 1415, 1990 WL 9973, *2 (citing Illinois v. Gates, 462 U.S. 213 (1983)). The Sixth Circuit has defined probable cause as "reasonable grounds for belief supported by less than *prima facie* proof but more than mere suspicion," United States v. Padro, 52 F.3d 120, 122-23 (6th Cir. 1995), and as a "practical, non-technical conception that deals with the factual and practical considerations of everyday life." United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Abboud, 438 F.3d 554, 569 (6th Cir. 2006) (citing, Frazier, 423 F.3d at 537).

The standard of review for this Court is whether, granting great deference to the decision of the issuing magistrate judge, the evidence contained in the affidavit viewed as a whole provided a substantial basis for the issuing magistrate judge's finding of probable cause. Massachusetts v. Upton, 466 U.S. 727, 732 (1984); United States v. Greene, 250 F.3d 471, 478 (6th

Cir. 2001); United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991). The "task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Upton, 466 U.S. at 2085.

Defendant Hatcher argues [Doc. 69], citing United States v. Weaver, 99 F.3d 1372, 1380 (6th Cir. 1996), that the search warrant affidavit at issue in this case "completely lacks sufficient allegations necessary to establish probable cause," or is a "bare bones" affidavit. In Weaver, the defendant argued that the affidavit, which relied solely on information obtained from a police informant, was a "bare bones" affidavit because it contained "few particularized facts linking [the] suspect and his residence to illegal drugs or any other criminal activities." Id. at 1377. The Court agreed with the defendant, holding that (1) there was no "underlying factual circumstances to support the informant's knowledge," but more importantly (2) the officer possessed only the informant's tips linking the defendant to possible drug activities and "undertook no substantive independent investigative actions to corroborate his informant's claims, such as surveillance of the defendant's residence for undue traffic...." Id. at 1379.

The government responds [Docs. 101] that the affidavit contains a substantial basis for the issuing magistrate's determination that probable cause existed and, therefore, the defendant's motion should be denied because: (1) the affidavit contains factual allegations regarding bi-weekly shipments of marijuana that were transported to the defendants' residences and that hundreds of thousands of dollars were paid between 1998 and 2002 for the purchase of marijuana delivered to these residences; (2) both defendants had prior felony drug convictions; (3) these allegations were corroborated by surveillances of a drug courier to the defendants' residences in January, 2002 and

in April, 2002; and (4) these allegations were further corroborated by the seizure of ninety-nine (99) pounds of marijuana from a drug courier in May, 2002 who indicated that the marijuana was bound for Tennessee and that he had been shipping marijuana on a monthly basis to the defendants.

The government also states that the affidavits contain the background experience and training of the affiant, who is an expert in the investigation of drug trafficking and money laundering offenses, and who opines that drug traffickers keep and maintain certain records of their drug related activities, proceeds and assets purchased with drug proceeds at their residences. United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000) (holding that conclusions of experienced law enforcement officer regarding where evidence of crime will likely be found is a substantial fact upon which the issuing magistrate may rely when authorizing a search warrant). The government further notes that law enforcement was not requesting a search warrant for controlled substances, but instead for documentary-type evidence of drug trafficking and, in fact, such evidence was found at both defendants' residences.

The Court finds that the factual contents of the affidavit, when viewed as a whole, clearly provide a substantial basis for the issuing magistrate judge's finding of probable cause.

First, the affidavit contains factual allegations corroborated by several sources, including DEA Task Force Agents and co-conspirators, that large shipments of marijuana were transported to the defendants' residences and that money was exchanged for same between 1998 and 2002. The Court finds that the statements of Rodriguez, Holland and Caswell, who each testified before a federal grand jury as to their firsthand dealings with the defendants, corroborate one another because (1) each mentions the location of the defendants' residences and (2) each describes the defendants engaging in drug trafficking activities during a similar time period.

10

Second, unlike in <u>Weaver</u>, the allegations in this case were corroborated by surveillances of a drug courier to Defendant Hatcher's residence located at 4323 Horace Taylor Road in January and April, 2002, and further corroborated by the seizure of ninety-nine (99) pounds of marijuana from the same transportation vehicle in May, 2002. Finally, the affidavit also contains the background experience and expert training of the affiant, who opines that drug traffickers keep and maintain certain records of their drug-related activities and assets purchased with drug proceeds at their residences. <u>See</u> <u>Blair</u>, 214 F.3d at 696.

In light of the extensive affidavits containing the aforementioned specific and particularized information, the Court finds that there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrants. In other words, the Court finds that the affidavits contain facts that indicate a fair probability that evidence of a crime would be located on the premises of the proposed search, specifically at the defendants' residences, and, thus, establish probable cause justifying the issuance of the search warrants.[5]

Furthermore, to the extent that the defendants argue [Doc. 152] that the search warrants are invalid because the incidents referred to in the affidavits took place "<u>on</u>" the premises[6] rather than <u>inside</u> the house, the Court disagrees. The Court finds that the recited statements supporting the search warrants and the fact that "[i]n the case of drug dealers, evidence is likely to

---

[5] The Court finds, as later discussed, that there is no substantial basis for concluding that a search of the premises would uncover "U.S. currency possessed to maintain and finance an ongoing drug business and to conceal drug proceeds derived from illegal drug trafficking." Thus, as to the search warrant's authorization to seize U.S. currency at the defendants' residences, the Court finds a lack of probable cause due to staleness as there is no evidence in the affidavit to indicate that the defendants were engaged in an "ongoing drug business" at the time of the search warrant in September, 2005. <u>See</u> <u>infra</u> Report at 19-25 for a more thorough analysis; <u>see also</u> [Doc. 69 and Ex. 1-2].

[6] The search warrants were for the "premises" at 2047 Jericho Road and 4323 Horace Taylor Road, Maryville, Blount County, Tennessee, defined as "all buildings, appertenances, and vehicles located in the curtilage of such residence."

11

be found where the dealers live," United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998), support

a finding of probable cause to support the issuance of the warrant.

## 2. Staleness

Initially, the Court notes that the standard of review for a staleness determination is

the same as the standard for determining the sufficiency of an affidavit. Greene, 250 F.3d at 480.

(citing, United States v. Canan, 48 F.3d 954, 958-59 (6th Cir. 1995). In sum, a magistrate judge

must determine whether, under the totality of the circumstances, probable cause exists to issue the

warrant. Id. at 958. This Court will only reverse a magistrate's decision to grant a warrant if it was

arbitrarily exercised. Id. (citing, United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998).

The probable cause required for a search warrant "is concerned with facts relating

to a presently existing condition." United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006)

(citing, Spikes, 158 F.3d at 923. "Thus the critical question is whether the information contained

in the affidavit, when presented to the...judge, established that there was a fair probability that

[evidence] would still be found at [the location of the search]." Id. In other words, a warrant is stale

if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence

at a specific location. Id.

The staleness inquiry is tailored to the specific circumstances in each case. Id.

(citing, Sgro v. United States, 287 U.S. 206, 210-11 (1932)). "[T]he length of time between the

events listed in the affidavit and the application of the warrant, while clearly salient, is not

controlling." Id. It is possible then even if a substantial amount of time has elapsed between "a

defendant's last reported criminal activity" and the issuance of the warrant, the warrant has not

become stale.  Id.  The Sixth Circuit has outlined several factors to consider when analyzing staleness:

> (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?)";
>
> (2) "the criminal (nomadic or entrenched?)";
>
> (3) "the thing to be seized (perishable and easily transferable or of enduring utility to its holder?)";
>
> (4) "the place to be searched (mere criminal forum of convenience or secure operational base?)."

Id. (quoting, Andresen v. State, 331 A.2d 78, 106 (Md.Ct.Spec.App. 1975).

The defendants contend [Docs. 43, 69 and 152] that the search warrants, issued on September 29, 2005 were based on stale information provided by affidavit, in that the last allegation of drug activity at 4323 Horace Taylor Road [Defendant Hatcher's residence] was on August 28, 2002.  See United States v. Greene, 250 F.3d 471 (6th Cir. 2001), and United States v. Helton, 314 F.3d 812, 822 (6th Cir. 2003).

The government responds [Docs. 101, 103, 154 and 155] that the items sought to be seized were documentary in nature and assets, not controlled substances.  It also notes that the alleged conspiracy was ongoing, over a period of three to four years, where drugs were being distributed on a monthly basis from the defendants' residences.  Relying of the factors set forth in Spikes, 158 F.3d at 923, the government argues that the following supports issuance of the search warrants in the instant case: (1) the criminal activity taking place out of the residences was not a chance encounter but part of an ongoing regenerating conspiracy; (2) the criminal activity was not nomadic, but rather took place on a regular basis at the defendants' residences; (3) the items sought to be seized were not perishable controlled substances which could easily be transferred and quickly

13

consumed, but were of enduring utility, such as, records of drug transactions, contact records, record of assets, etc.; and (4) the place to be searched was not merely a criminal forum of convenience, but a secure operational base, e.g., a residence.

Additionally, the government relies on <u>Abboud</u> to support its contention that the search warrant in this case was not stale. The government maintains that in <u>Abboud</u>, the factual allegations contained in the affidavit related to events in 1999, while the search warrant was not issued until 2002. <u>Abboud</u>, 438 F.3d at 573. It also notes that the <u>Abboud</u> Court analyzed the facts of that case under the four factors set forth in <u>Spikes</u> above, and noted that (1) "evidence of ongoing criminal activity will generally defeat a claim of staleness," (2) the search warrant in this case sought "almost exclusively business and personal financial records," (3) that "business records are a type of evidence that defy claims of staleness," and (4) that "business records were usually kept at home." <u>Abboud</u>, 438 F.3d at 573-74.

Finally, the government argues that even if the Court finds that there was not a substantial basis for a finding of probable cause justifying the issuance of the search warrants, the defendants' motions should still be denied because the law enforcement in this case relied in good faith upon the issuance of valid search warrants. It maintains that under the <u>United States v. Leon</u>, 468 U.S. 897 (1984), "good exception" rule, the question is whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The government argues that the affidavits in support of the warrants were detailed affidavits of seventeen (17) pages which directly connected the defendants' residences to the criminal activity being investigated and that the affiant is an experienced law enforcement officer who believed that evidence of a the defendants' drug related activities would be found at the defendants' residences.

14

### i. The Character of the Crime

The Sixth Circuit has found that "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." Greene, 25 F.3d at 481. The Court has also found that ongoing criminal activity *at a given time* may likewise be sufficient to defeat a claim of staleness. Abboud, 438 F.3d at 573. (citing, Greene, 25 F.3d at 481); see also Canan, 48 F.3d at 959 (finding ongoing activity at the defendant's house four years prior to the issuance of the search warrant was sufficient to defeat a claim of staleness). "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Canan, 48 F.3d at 959. Moreover, although a significant period of time may have elapsed since a defendant's last reported criminal activity, it may be properly inferred that indicia of criminal activity, such as records of criminal activity, will be kept for some period of time." Id. (citing, United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991); United States v. Craig, 861 F.2d 818, 822 (5th Cir. 1988)).

In the present case, the defendants argue that the affidavits in support of the warrants to search their residences, issued in September, 2005, were based upon "stale" data, in that the affidavits do not describe any conduct connected with criminal activity occurring at either one of their residences after August, 2002 [Docs. 69 and 152]. While the Court agrees that the affidavits do not allege any criminal conduct occurring after 2002, it nonetheless finds that the affidavits provide substantial evidence of the defendants ongoing criminal activity between 1998 and 2002.[7]

---

[7] Ramiro Rodriguez stated that he began marijuana trafficking in 1998 or 1999 and sold marijuana through Jeff Cole, who sold marijuana in Tennessee to Defendants Hatcher and Harmon. (Jerry Aff. ¶ 14). Daniel Holland stated that in late 1998 or early 1999, he and Cole transported hundreds of pounds of marijuana to Hatcher and Harmon and picked up money from them. (Jerry Aff. ¶ 18). Holland stated in the spring of 1999 until later in 2000, he alone began transporting 100 pounds of marijuana to Hatcher and Harmon every two weeks; he stated that he and Caswell together transported 3,000 pounds of marijuana to Hatcher and Harmon. (Jerry Aff. ¶¶ 19-21). John Caswell stated that he transported marijuana to Hatcher and Harmon on three occasions in late 1999. (Jerry Aff. ¶ 22). From May or June, 2000 until May, 2002, Caswell began making regular monthly trips in which he transported between 20 to 40 pounds of marijuana for the first 4-5 months and then 100 pounds per trip after that. (Jerry Aff. ¶¶ 15, 23). Caswell sometimes delivered to Hatcher and

Specifically, the affidavit states that the defendants engaged in marijuana trafficking in or around 1998 and up until 2002, during which time thousands of pounds of marijuana were delivered to their residences in Maryville, Tennessee for which they paid up to approximately $800 per pound. This evidence is corroborated in the affidavits by several different sources, including statements made by Task Force Agents and co-conspirators, as well as corroborating surveillance evidence.

Thus, even though the affidavits do not establish a continuous criminal enterprise from 2002 to the issuance of the search warrants in 2005, the aforementioned Sixth Circuit jurisprudence suggests that ongoing criminal activity *at a given time* may be sufficient to defeat a claim of staleness.

### ii. The Criminal

The Court finds that it can reasonably be inferred from the affidavits that the defendants were not nomadic inasmuch as the affidavits indicate that the defendants possessed, occupied and/or resided at the premises described in the search warrants[8], at least since 1998. This information is corroborated by co-conspirators who made deliveries to the defendants at the locations described in the search warrants, as well as by postal and utility records which confirmed that the defendants received mail and had utilities in their names at these addresses. There being no evidence to indicate that the defendants moved from place to place, so as to decrease the probability of finding evidence at these locations, the Court finds that the affidavits support the fact that the defendants were not nomadic, but instead were entrenched.

_____

sometimes to Harmon, and would bring money back from them to Rodriguez. (Jerry Aff. ¶ 24.)

[8] See *supra* note 6.

16

### *iii. The Thing to be Seized*

Initially, the Court notes that the search warrants in the instant case authorized the seizure of items that were documentary in nature and assets, not controlled substances [Doc. 69 and Ex. 1-2].[9]

The Sixth Circuit has found that business records are a type of evidence that defy claims of staleness.  See United States v. Abboud, 438 F.3d 554, 573 (6th Cir. 2006); United States v. Brownderville, 187 F.3d 638, 1999 WL 618067 (6th Cir. Aug. 2, 1999); United States v. Martinez, 106 F.3d 402, 1997 WL 26461, *2 (6th Cir. Jan. 22, 1997);  United States v. Word, 806 F.2d 658, 662 (6th Cir. 1986); United States v. McManus, 719 F.2d 1395, 1400-01 (6th Cir. 1983); see also United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004); United States v. Farmer, 370 F.3d 435, 439-40 (4th Cir. 2004); United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 148 (3d Cir. 2002).

In Martinez, the Court held that the search warrant was valid because it sought information regarding business and financial records, and such records are typically found in either a residence or place of business.  Martinez, 1997 WL 26461 at *2.  The Court found that it was reasonable for the magistrate judge to infer that evidence of drug trafficking and money laundering would be found in Martinez's apartment and place of business because two sources had indicated that the defendant used his business as a money laundering operation for his drug profits. Id. Furthermore, there was evidence from several sources that the defendant engaged in illegal activities in his apartment.  Id.

---

[9]  See *infra* Report at 19.

Similar to <u>Martinez</u>, the search warrants in this case sought evidence of drug trafficking and money laundering, predominantly in the form of business and financial records [Doc. 69 and Ex. 1-2]. Additionally, the Court finds that the affidavits in this case, like <u>Martinez</u>, present substantial corroborating information that the defendants engaged in marijuana trafficking at their residences. The Court also finds that the affidavits provide information regarding TFO Jerry's experience and training in investigating drug traffickers and his professional opinion that drug traffickers keep and maintain records of their drug-related activities at their residences, as well as assets purchased with drug proceeds. Accordingly, the Court finds that the magistrate judge was correct in believing that certain documents and assets regarding the defendants' drug trafficking and money laundering activities would be found at the defendants' residences. <u>See</u> <u>Jones</u>, 159 F.3d at 975 ("[i]n the case of drug dealers, evidence is likely to be found where the dealers live").

### iv. The Place to be Searched

The affidavits at issue in this case requested the search of the defendants' residences. The Court finds, as stated in the affidavits, that the marijuana trafficking and money laundering alleged centered around the defendants' illegal transactions conducted at their residences, specifically located at 2047 Jericho Road and 4323 Horace Taylor Road in Maryville, Tennessee. As noted above, the affiant opined that drug traffickers keep and maintain certain records of their drug-related activities and assets derived from the sale of drugs at their residences. Thus, the Court finds that the defendants' residences were not "mere criminal forum[s] of convenience," but rather, they were at the heart of the criminal charge or, in other words, were a "secure operational base" where ongoing criminal activity occurred over a span of at least three (3) to four (4) years.

18

Accordingly, the Court finds that all factors weigh against a claim of staleness. The Court is especially persuaded by the fact that business and financial records are typically found at either a residence or place of business, and that records of drug trafficking are no exception. Therefore, having found (1) that the defendants were engaged in ongoing criminal activity between 1998 and 2002, (2) that they were entrenched, (3) that the search warrants sought records and assets regarding the defendants' drug trafficking and money laundering activities, and (4) the places to be searched were secure operational bases, the Court finds that the warrants were not stale.

### 3. Particularity

In the present case, the search warrants authorized [Doc. 69 and Ex. 1-2] the executing officers to search for and seize the following items from the premises located at 4323 Horace Taylor Road and 2047 Jericho Road, both located in Maryville, Blount County, Tennessee:

1. Proceeds of drug sales, and assets purchased with drug proceeds, to include jewelry, vehicles, weapons, electronic equipment, and other expensive personal property, and records (including bank account records) or purchases, conversion, and storage of such assets;

2. U.S. currency possessed to maintain and finance an ongoing drug business and to conceal drug proceeds derived from illegal drug trafficking;

3. Books, records, receipts, hotel records, gasoline receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, purchase and distribution of controlled substances;

4. Books, papers, Rolodexes, cards and pieces of papers, cellular telephones, computers and electronic organizers, which reflect names, nicknames, addresses and/or telephone numbers, and pager numbers of coconspirators and drug customers;

5. Photographs, videotapes, and audio tapes of Johnny Hatcher and

19

Donald Harmon and their drug trafficking coconspirators and customers, their assets derived from drug trafficking properties, and their contraband.

The defendants, citing United States v. Christine, 687 F.2d 749 (3d Cir. 1982), contend [Docs. 43 and 152] that the authorization to seize property in the five clauses above left to the officers' discretion to decide if property (1) was "proceeds of drug sales," (2) was "derived from illegal drug trafficking," (3) was "related" to "controlled substances," (4) reflected information "of coconspirators and drug customers," and (5) was "derived from drug trafficking." The defendants furthermore contend, citing Andresen v. Maryland, 427 U.S. 463, 489 (1976), that the property authorized to be seized in clauses 1, 3 and 4 of the search warrants was overly broad and included seizure of lawful property.

The government disagrees [Docs. 103, 154 and 163] that the search warrants were not sufficiently particular in their description of the items of property to be seized and contends that case law, in fact, supports the language used in the search warrants. See United States v. Abboud, 438 F.3d 554, 575 (6th Cir. 2006); United States v. Greene, 250 F.3d 471, 477-78 (6th Cir. 2001); United States v. Blair, 214 F.3d 690, 697 (6th Cir. 2000); United States v. Henson, 848 F.2d 1374, 1382-83 (6th Cir. 1988).[10] Specifically, as to the defendants argument that the search warrants were

---

[10] In Abboud, the Court held that the search warrant's request to seize "'[l]ogs or ledgers that reflect the recording of banking activity, [a]ll bank statements, deposit slips, withdrawal slips, official checks, money orders, cancelled checks, wire transfers and other documents for any and all bank accounts, and other specific forms of records,'" was sufficiently particular to permit seizure of those records in an investigation regarding bank fraud.
   In Blair, the search warrant authorized the seizure of "[b]ooks, records, receipts, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the transportation, importation, ordering, sale, and distribution of controlled substances." The Blair warrant also authorized the seizure of "records of financial transactions and electronic equipment to aid them in their drug trafficking activities."
   In Greene, the Court stated that "general descriptions of property are appropriate if descriptions of specific types of that property have already been furnished, and different types of that property would be relevant in determining the crime."
   In Henson, the Court stated that a description of items of property likely to provide information concerning the target's involvement in crime, while generic, was as specific as the nature of the activity being investigated permitted and satisfied the particularity requirement of the Fourth Amendment.

overbroad because they permitted the seizure of drug proceeds and assets purchased with drug proceeds, the government [Doc. 163], citing <u>United States v. Sissler</u>, 966 F.2d 1455, 1992 WL 126974, **6 (6th Cir. June 10, 1992), contends that this description was not overbroad because (1) there was probable cause to believe that proceeds of drug trafficking would be found in both of the defendants' houses, and (2) a more specific description than that provided in the search warrant of the assets to be seized was not possible.[11]

Finally, the government contends [Doc. 103] that the defendants' argument that the search warrant improperly allowed the seizure of "lawful property" misses the issue. It contends that all of the property authorized to be seized in the search warrant, which lawful in and of itself, could be used for an unlawful purpose and, thus, constitutes evidence of the commission of a crime. It notes, however, that even if one of the above clauses was overly broad, the remedy would not be suppression of the issue of all of the evidence, but simply severance of that clause. <u>Greene</u>, 250 F.3d at 477; <u>United States v. Blakeney</u>, 942 F.2d 1001, 1027 (6th Cir. 1991).

The Fourth Amendment requires that search warrants describe the items to be searched for and seized with particularity so as to "eliminate the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." U.S. Const. amend. IV.; <u>Greene</u>, 150 F.3d at 476-77 (citing <u>Blakeney</u>, 942 F.2d at 1026). While a "general order to explore and rummage" is not permitted, <u>Id.</u>, "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." <u>Greene</u>, 150 F.3d at 477 (citing

---

[11] In <u>Sissler</u>, the search warrant authorized the officers to search for and seize: "(1) marijuana; (2) scales used to weigh marijuana; (3) proceeds of marijuana sales in the form of U.S. currency; (4) records of marijuana transactions; (5) records of assets purchased with the proceeds of marijuana transactions; (6) safe deposit box keys; and (7) telephone and address books containing names, addresses, and telephone numbers of marijuana customers and suppliers."

United States v. Ables, 167 F.3d 1021, 1033 (6th Cir. 1999)). Consequently, a description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." Id. However, infirmity due to overbreadth does not doom the entire warrant; rather, it "requires the suppression of evidence seized pursuant to that part of the warrant..., but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized–on plain view grounds, for example-during their execution)." Greene, 150 F.3d at 477 (citing United States v. Brown, 984 F.2d 1074, 1077 (6th Cir. 1993)).

        In the instant case, the defendants contend that the above five (5) enumerated clauses fail to describe with particularity the items to be searched for and seized, thus, giving the executing officers discretion to decide what was subject to seizure under these five clauses. The Court disagrees with the defendants with respect clauses 3, 4 and 5. Although these clauses use generic terms like "books, records, papers, computers...photographs, videotapes....", the Court notes that "[u]se of a generic term is not a per se violation of the Fourth Amendment....." Greene, 250 F.3d at 477 (citing Blakeney, 942 F.2d at 1027). In other words, "[w]here the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice." Henson, 848 F.2d at 1383. On the other hand, while the warrants in this case use generic terms to describe the class of items to be seized, the warrants are specific in that they are directed toward items likely to provide information concerning the defendants involvement in marijuana trafficking activities. See Abboud, 438 F.3d at 575.

        Additionally, the Court finds that TFO Jerry could not have known at the time he applied for the warrants (1) what precise records or files would contain information related to controlled substances in clause 3, (2) what precise records, files or electronic equipment would reflect identifying information of coconspirators and drug customers in clause 4, and (3) what

22

precise photographs/videotapes/audiotapes contained recordings of the people, assets or contraband in clause 5. See Blair, 214 F.3d at 697; Henson, 848 F.2d at 1383. Nonetheless, as aforementioned, the descriptions in the warrants were directed toward items likely to provide information concerning the defendants "distribution of marijuana," "conspiracy to distribute marijuana," and "conspiracy to commit money laundering;" "contraband;" and the "fruits of the commission of these crimes" [Doc. 69 and Ex. 1-2][12]. Furthermore, "[o]nce a category of seizable papers ha[s] been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgement as to whether a particular document falls within the described category." Blair, 214 F.3d at 697. Noting that other courts have approved warrants at least as general as the ones attacked here, the Court finds that clauses 3, 4 and 5 were reasonably specific under the circumstances of this case.

As to clause 2, which authorizes the search and seizure of "U.S. currency possessed to maintain and finance an ongoing drug business and to conceal drug proceeds derived from illegal drug trafficking," the Court will not proceed to analyze this clause with respect to the particularity requirement of the Fourth Amendment. Instead, the Court will analyze the scope of the search and seizure authorized by the warrant against the ambit of probable cause established by the affidavit upon which the warrant issued. See Christine, 687 F.2d at 753. A search warrant will be upheld against a probable cause challenge where there is a substantial basis for concluding that a search would uncover evidence of wrongdoing. United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998).

In the present case, the Court has already found that the affidavits provide substantial evidence of the defendants ongoing criminal activity between 1998 and 2002. The Court also agreed

---

[12] See supra note 3.

with the defendants that the affidavits do not allege any criminal conduct occurring after 2002.

Because probable cause to search "is concerned with facts relating to a presently existing condition,

there arises the "unique problem of whether the probable cause which once existed has grown stale."

Spikes, 158 F.3d at 923. Nonetheless, "[w]here recent information corroborates otherwise stale

information, probable cause may be found." Id. (citing Henson, 848 F.2d at 1381-82). Here, the

affidavits contain no recent information demonstrating that the drug activity at the defendants'

residences continued after 2002. Because there is no recent corroborating evidence of drug

trafficking activities at the defendants' residences between August, 2002 and September, 2005, the

Court finds that there is no substantial basis for concluding that a search would uncover "U.S.

currency possessed to maintain and finance an ongoing drug business and to conceal drug proceeds

derived from illegal drug trafficking." Thus, the Court finds that clause 2 of the search warrant is

invalid because it was based on stale information.[13]

   As to clause 1, which authorizes the search and seizure of "proceeds of drug sales,

and assets purchased with drug proceeds, to include jewelry, vehicles, weapons, electronic

equipment, and other expensive personal property, and records (including bank account records) or

purchases, conversion, and storage of such assets," the Court finds that this clause is not overbroad

to the extent that it authorizes the search and seizure of the following:

> assets purchased with drug proceeds, to include jewelry, vehicles,
> weapons, electronic equipment and records (including bank account
> records) or purchases, conversion and storage *of these particular
> assets*.

On the other hand, the Court finds that clause 1 is overbroad in its authorization of the seizure of

---

[13] See *supra* Report at 12-19 for a more thorough analysis of the staleness issue. The Court's analysis of clause 2 does not in any way eviscerate its previous staleness findings.

"proceeds of drug sales" because, to the extent this provision authorized the seizure of proceeds of marijuana sales in the form of U.S. currency, the Court has found no probable cause to indicate that drug trafficking proceeds, in the form of U.S. currency, would still be found at the defendants' residences as of the date of the search warrant in September, 2005.

. Second, as to the seizure of "other expensive personal property," the Court finds this to be an overbroad "catch-all" provision, giving the officers "too much discretion to seize personal property not listed." See Greene, 250 F.3d at 477.

The Sixth Circuit has held that the remedy for an overbroad warrant is not to suppress all evidence seized pursuant to the warrant, but rather to sever the overbroad portions of the warrant from those portions that are sufficiently particular." Ford, 184 F.3d at 578. In other words, the Court is not required to suppress anything described in the valid portions of the warrant. Greene, 150 F.3d at 477. Thus, to the extent that any drug proceeds, in the form of U.S. currency, or other unspecified "expensive personal property" was seized under clause 1 or 2 of the present case, it should be suppressed. The Court also notes that while clauses 1-5 arguably fail to limit the broad descriptive terms by relevant dates, the Court nonetheless finds that their subject-matter limitation (fruits and evidence of drug trafficking activities) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit. See Ford 184 F.3d at 578. In other words, the Court finds no problem with the time frame the warrant allowed with respect to the items to be searched for and seized in clauses 1-5.

### 4. Nexus with the Location Searched

In the present case, citing United States v. Laughton, 409 F.3d 744 (6th Cir. 2005), Defendant Hatcher [Doc. 69] contends that there was a lack of nexus between the criminal activity

alleged in the affidavit and the place to be searched. The government responds [Doc. 101] that the defendant's allegations simply disregard the allegations that marijuana was delivered to the defendant's residence in exchange for large sums of money and that law enforcement officers surveilled a vehicle which transported marijuana to defendant's residence on two occasions.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." United States v. Washington, 380 F.3d 236 (6th Cir. 2004) (citing, Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). In the Laughton case, which the defendant apparently relies upon, the Court held that the warrant "failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit. That the affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." Laughton, 409 F.3d at 747. Thus, the critical question for the Court in the present case is whether the facts alleged in the affidavit established a sufficient nexus between the defendant and the address given or between the defendant and any criminal activity that occurred there.

The Court finds that Defendant Hatcher's argument that there was no nexus between the locations searched, his residence, and the evidence sought is without merit. First, the affidavit supports the finding that the defendant possessed, occupied and/or resided at the premises described in the search warrant and, more importantly, the defendant has not denied same. Second, there is ample evidence in the record to support the government's allegations that the defendants engaged in ongoing criminal activity between 1998 and 2002 at their respective residences in Maryville, Tennessee. Third, the Court relies on Sixth Circuit authority in finding that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." Jones, 159 F.3d at 975. The Court

26

additionally relies on the professional opinion of TFO Jerry that drug traffickers keep and maintain records of their drug-related activities and assets purchased with drug proceeds at their residences. See Abboud, 438 F.3d at 572 ("the magistrate correctly relied on the affiant's experience in his assessment of the probable location of the evidence"). Thus, the Court finds that the facts alleged in the affidavit establish a sufficient nexus between the criminal activity (marijuana trafficking) and Defendant Hatcher's residence.

### 5. Omission of Material Facts

The defendants, generally citing Franks v. Deleware, 438 U.S. 154 (1978), contend [Doc. 43] that the search warrant affidavits in ¶¶ 26 and 27 recklessly omitted material facts that the dates of the defendants' convictions in state court were actually in the 1990s, not in 2003.

Paragraph 26 of the affidavit states:

On December 29, 2003, TFO Lisa Carroll, DEA, checked the National Crime Information computer (NCIC) concerning Johnny E. Hatcher, Jr. As a result of this search, it was discovered that Johnny E. Hatcher, Jr., date of birth May 28, 1951, was received by the Louisiana state prison system, Saint Gabriel, Louisiana. Hatcher was sentenced to 5 years, for possession of cocaine.

Paragraph 27 of the affidavit states:

On December 29, 2003, TFO Lisa Carroll, DEA, checked the National Crime Information computer (NCIC) concerning Donald Harmon. As a result of this search, it was discovered that Donald Harmon, date of birth July 22, 1969, was received at the Blount County Jail. Harmon was sentenced to two years with the Tennessee Department of Correction. Harmon served 120 days in the Blount County Jail, and received 1 year and 8 months of probation. Harmon was sentenced for possession with intent to distribute marijuana.

The government acknowledges [Doc. 103] that the conviction dates for the defendants' felony drug offenses were not included in the allegations set forth in paragraphs 26 and 27 of the affidavits. The government contends, however, that it is clear from the language in the affidavits that the defendants were not convicted on December 29, 2003 and, furthermore, maintains that such omissions could not have misled the issuing magistrate judge. It states that the purpose of these factual allegations was simply to inform the issuing magistrate that both defendants had prior felony drug convictions, further enhancing the probable cause to believe that evidence of a crime would be found at each defendant's residence.

In <u>Franks v. Delaware</u>, the Supreme Court created procedural protections for a defendant who claimed that the affidavit supporting the probable cause of a search warrant contained intentional or reckless falsehoods. 438 U.S. 154, 171 (1978). The Court stated that (1) it presumed the validity of the affidavit in support of the search warrant and (2) that the burden is on the defendant to show such falsehoods in the affidavit. <u>Id.</u> If the defendant meets this burden, then the question becomes whether the affidavit is sufficient to support probable cause without the falsehoods. <u>Id.</u> If it is sufficient, then the warrant is valid. <u>Id.</u> at 171-72. If it is insufficient, then the defendant is entitled to a hearing concerning the probable cause in the affidavit. <u>Id.</u>

The Sixth Circuit has interpreted <u>Franks</u> to include omissions and found that "except in the very rare case where the defendant makes a strong preliminary showing that the affiant, with an intention to mislead, excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, <u>Franks</u> is inapplicable to the omission of disputed facts." <u>See</u> <u>Abboud</u>, 438 F.3d at 574; <u>United States v. Sawyers</u>, 127 Fed. Appx. 174, 2005 WL 647774 (6th Cir. March 22, 2005); <u>Hale v. Kart</u>, 396 F.3d 721, 726 n. 4 (6th Cir. 2005) (citing <u>Mays v. City of Dayton</u>, 134 F.3d 809, 815 (6th Cir. 1998)). Whether the misstatement, or omission of information,

28

is material or not depends on the extent to which the issuing magistrate judge relied, or would have relied, on the information in issuing the search warrant. <u>Yancey v. Carroll County, Ky.</u>, 876 F.2d 1238, 1244 (6th Cir. 1989).

   The Court finds that the defendants have not made a sufficient showing to obtain a <u>Franks</u> hearing. Here, the defendants claim only one omission, that the search warrant affidavit "recklessly omitted material facts" regarding the conviction dates of the defendants' prior felony drug offenses. As the government has acknowledged in its written response, the dates of the defendants' convictions were not included in the search warrant affidavits. The affidavits do not, contrary to the defendants' claim, assert that the defendants were ever convicted in 2003. Rather, the 2003 reference is only with regard to the date of TFO Carroll's <u>discovery</u> of the defendants prior convictions. As such, the Court does not find that the affiant lied or acted in reckless disregard for the truth in omitting the actual dates of the convictions. While the Court agrees with the government that it may have been more informative for the magistrate judge to know the exact conviction dates, the Court does not find that these dates were critical information with regard to finding probable cause.

   The Court finds that the purpose of paragraphs 26 and 27 of the search warrants was simply to inform the magistrate judge that both defendants had prior felony drug convictions. The Court does not believe that the issuing magistrate judge would have been misled by the language in said paragraphs, nor does the Court find, more importantly, that the issuing magistrate judge would have relied upon the information in these paragraphs in issuing the search warrant. Nonetheless, even if the defendants' prior conviction dates could somehow arguably be said to bear upon the magistrate judge's finding of probable cause, the Court finds that there remains more than sufficient content in the affidavits to support a finding of probable cause after the contested

29

paragraphs are set aside.  See Franks, 438 U.S. at 156.  Accordingly, the defendants are not entitled to a Franks hearing.

### 6. Daytime versus Nighttime Search

The defendants contend [Doc. 43] that the search warrants were unlawful on their face because they permitted the searches between the hours of 6 a.m. and 10 p.m. and that those times were not during daylight hours.

The government responds [Doc. 103] that pursuant to Rule 41 (a) of the Federal Rules of Criminal Procedure, "'[d]aytime' means the hours between 6:00 a.m. and 10:00 p.m. according to local time."  It contends, in the instant case, that the search warrant satisfied the provisions of Rule 41 because it commanded the officers to execute the search warrant "between 6 a.m. and 10 p.m."

At the hearing on this motion, Defendant Harmon stated that he wished to withdraw his argument contained in [Doc. 43].  The Court notes that the government did not object to this request.  Thus, the Court finds that the portion of Defendant Harmon's motion pertaining to "daytime versus nighttime searches" should be WITHDRAWN.

## IV.    CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that the defendants' motions to suppress seized evidence [**Docs. 43 and 69**] be **GRANTED in part** to the extent any drug proceeds, in the form of U.S. currency, or other unspecified "expensive personal property" was seized under clause 1 or 2 of the search warrants. In all other respects, the Court **RECOMMENDS** that defendants' motions be **DENIED**[14].

Respectfully Submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[14]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2).  Failure to file objections within the time specified waives the right to review by the District Court.  Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).